UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GINA CASTRO,

    Plaintiff,

        v.                                               No. 3:18-cv-01571(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Gina Castro's, application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 16].

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

1

The Commissioner, in turn, has moved for an order affirming her decision. [Doc. # 18]. This case was a close call; in the final analysis, however, after careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court reverses the decision of the Commissioner and remands the matter for additional proceedings.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

a. Facts

Plaintiff filed her DIB and SSI applications on October 10, 2013, alleging a disability onset date of November 5, 2012. Her claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On January 6, 2016, a hearing was held before Administrative Law Judge Ronald J. Thomas ("the ALJ"). Plaintiff, who appeared *pro se*, and a vocational expert ("VE") provided testimony at the hearing. On June 17, 2016, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On July 23, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff completed through the tenth grade in school. (R. 57). She cannot communicate in English. (R. 54). She was forty-seven years old on the date of the hearing before the ALJ. (R. 56). Plaintiff last worked in February 2013 as a machine operator. (R. 58). She has additional past work experience as a welding machine feeder, assembler, and daycare worker. (R. 73). Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 16-2]. The Court adopts this stipulation and incorporates it by reference herein.

b. The ALJ's Decision

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the

3

Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

Here, at Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 36). At Step Two, the ALJ found Plaintiff has the following severe impairments: fibromyalgia and depression. (*Id.*). The ALJ determined that diabetes, carpal tunnel syndrome, and rheumatoid arthritis are nonsevere impairments. (R. 36-37). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 37). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> Plaintiff can perform light work except she can occasionally twist, kneel, crawl, bend, squat, balance, and climb. She can occasionally interact with co-workers, the general public, and supervisors.

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

4

(R. 38). At Step Four, the ALJ relied on the testimony of the VE to find that Plaintiff can perform past relevant work. (R. 43). In the alternative, at Step Five, the ALJ concluded that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 44). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of buffing machine tender, sorter, and extrusion operator. (*Id.*). Accordingly, the ALJ found Plaintiff was not disabled.

## **DISCUSSION**

Plaintiff first argues that the Commissioner's decision should be reversed and remanded because the ALJ erred in failing to fulfill his duty to assist her in developing the evidence of record. Since the Court agrees that remand is required on this issue, it need not address Plaintiff's other claims of error.

In support of her position that there were gaps in the administrative record that the ALJ failed to assist her, an unrepresented claimant, in developing, Plaintiff claims the ALJ should have obtained a medical source statement from Dr. Ashwood, her primary care physician. The Commissioner responds that since the record contained sufficient information upon which to assess an RFC, the ALJ was not required to obtain a medical source statement from Dr. Ashwood. After a painstaking review of the record and the case law relevant to this issue, the Court finds that the ALJ erred by failing to obtain a medical source statement from Dr. Ashwood and that remand for further development of the record is required.

Since social security disability proceedings are essentially non-adversarial in nature, it is well-established that the ALJ has an obligation to assist in developing the record. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). This duty to affirmatively develop the record is heightened when, as there, the claimant is unrepresented. *Echevarria v. Sec'y of Health &*

*Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). Thus, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* This court must "determine whether the ALJ adequately protect(ed) the rights of (a) *pro se* litigant by ensuring that all of the relevant facts (are) sufficiently developed and considered." *Id.* (quotation marks omitted). "In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to permit a reasoned disability determination and additional information is needed to resolve the question." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).

The court recognizes that the "affirmative duty imposed upon an ALJ to fully develop an administrative record is not without limits, and is heavily dependent upon the circumstances of the case at hand." *Bodine v. Colvin*, No. 3:11-CV-1265 LEK/DEP, 2013 WL 1108625, at *6 (N.D.N.Y. Feb. 25, 2013), *report and recommendation adopted,* No. 3:11-CV-1265 LEK/DEP, 2013 WL 1104127 (N.D.N.Y. Mar. 18, 2013). In particular, "[t]he duty to re-contact treating medical sources in order to fully develop a record arises only when the ALJ cannot decide the issue of disability based upon the existing evidence." *Id.* (citing *Rosa v. Callahan,* 168 F.3d 72, 79, n. 5 (2d Cir. 1999)). "When no obvious gaps exist in the administrative record, there is no affirmative obligation to seek additional information." *Id.*

In this case, the ALJ could not have made a disability finding without an opinion as to Plaintiff's functional capabilities from a medical source. The ALJ discussed two medical opinions in formulating the RFC: one was from a psychological consultative examiner who interviewed Plaintiff on one occasion; the ALJ gave little weight to this opinion. (R. 42). The second was a report Dr. Ashmore completed on April 15, 2015 by filling out a form to submit to

6

the Connecticut Department of Social Services. Dr. Ashmore diagnosed Plaintiff with carpal tunnel syndrome and reported she would not be able to work, full or part time, for "more than three months." (R. 424). Dr. Ashmore identified Plaintiff's symptoms as hand pain and cramping, and stated the prognosis was good once a surgeon had treated the carpal tunnel syndrome. (R. 425). The ALJ, in giving little weight to this report, said it was "not clear Dr. Ashmore is familiar with our disability program and evidentiary requirements," and that the report was "conclusory and does not describe what work-related physical and mental activities the claimant can still do despite her impairments." (R. 42).

The ALJ should have reached out to Dr. Ashmore to obtain clarification and additional information before giving the opinion – the only one in the record from a treating source – little weight.[3] The opinion evidence before the ALJ was scant, and did not include information about Plaintiff's physical functional capacities from a treating or examining source. This error is compounded because the treatment records in this case do not provide any helpful information from which the Court can determine whether the RFC is, in fact, supported by substantial evidence. Thus, without an opinion from Dr. Ashmore, the ALJ (and the Court) cannot truly understand the extent and nature of Plaintiff's impairments and their impact on her RFC. Given that the ALJ had a heighted duty to assist the *pro se* Plaintiff in developing the record, the Court finds the ALJ erred in not re-contacting Dr. Ashmore before giving the opinion little weight.

---

[3] In fact, the ALJ appears to have recognized the shortcoming of the form Dr. Ashmore completed. In discounting Dr. Ashmore's opinion, the ALJ stated that Dr. Ashmore did not describe the work-related activities Plaintiff could do despite her impairments. Perhaps Dr. Ashmore did not describe these activities because the form completed did not so require. Instead of rejecting the opinion for not containing a functional assessment for which the form did not call, the ALJ should have sought that information by re-contacting Dr. Ashmore.

In light of the critical role of a treating physician opinion in a disability determination, courts in this circuit have found, under circumstances similar to those here, that an ALJ is obligated to re-contact a treating physician to augment a vague or unclear or incomplete opinion before deciding to reject it. In *Prince v. Berryhill*, 304 F. Supp. 3d 281, 288 (D. Conn. 2018), the record contained a medical opinion from a treating physician that "merely contained check boxes without any elaboration." The ALJ gave the opinion "little weight," reasoning it was unsupported by objective medical evidence and based on the claimant's subjective complaints instead of medical conclusions. *Id.* The court held that the ALJ erred in not re-contacting the treating physician before deciding not to grant the opinion controlling weight. *Id.* While an ALJ is "not always required to re-contact a treating physician to clarify inconsistencies," the court reasoned, it was legal error not to do so in that case: the record did not contain an indication of the treating physician's views of the claimant's RFC in light of her impairments since treatment notes, which lacked detail, "[did] not compensate for the lack of a substantive treating physician opinion." *Id.* at 288-89.

Likewise, in *Sanchez v. Colvin*, No. 13 CIV. 6303 PAE, 2015 WL 736102, at *8 (S.D.N.Y. Feb. 20, 2015), it was legal error for the ALJ not to obtain opinions from claimant's treating physicians when the medical records from these sources "lack[ed] the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature of [the claimant's] mental-health conditions and their impact on her RFC." The court explained that "[t]he ALJ and reviewing courts should not have to be in the position of attempting to decode vague notations… [that do not] meaningfully convey *how* the condition in question affects the particular patient." *Id.* at *8-9.

8

The obligation to obtain an opinion from a treating source, or to re-contact a treating source for clarification of an incomplete opinion, is intensified when a claimant is unrepresented at the hearing level. In *Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008), the court found that an ALJ failed in fulfilling his duty to assist a *pro se* claimant in properly developing the record when the medical evidence, although substantial, contained minimal information "specifically outlining the contours of [the claimant's] capacity to perform work-related activities." The court explained, since the claimant was proceeding *pro se*, the ALJ "was under an enhanced duty to ensure a complete record and … to contact [the claimant's treating physicians] in order to ensure that all of the facts relevant to his RFC determination were sufficiently developed and considered." *Id.* at 433.

Further, the record in this case is not as extensive as in cases where failure to re-contact a treating source did not necessitate remand. The Commissioner points to *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013) and *Pellam v. Astrue*, 508 F. App'x 87 (2d Cir. 2013) in support of her position that the ALJ was not required to re-contact Dr. Ashmore in order to make an RFC assessment. Both cases are distinguishable.

In *Tankisi*, the Second Circuit explained that "remand is not always required when an ALJ fails in his duty to request opinions [in situations where] the record contains sufficient evidence from which an ALJ can assess [a claimant's] residual functional capacity." *Tankisi*, 521 F. App'x at 34. There, an ALJ did not err in failing to ascertain a medical source statement from a treating source when the record, which the court described as "quite extensive," contained a functional assessment from one treating physician and opinions from two consultative examiners. *Id.* In addition, the record was "assembled by the claimant's counsel" and was "adequate to permit an informed finding by the ALJ." *Id.*

9

In *Pellam*, the Second Circuit found an ALJ was not required to seek a medical source statement from a treating physician when the record contained an opinion from a consultative examiner that "largely supported" the assessed RFC, and treatment notes from the claimant's medical providers were consistent with the assessed RFC. *Pellam*, 508 F. App'x at 90. In fact, the court noted that because the consultative examiner's opinion was "largely consistent with the ALJ's conclusions," it "need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of *any* expert medical source opinion concerning the claimant's limitations." *Id.* at 90, n. 2.

The circumstances of the instant case make *Tankisi* and *Pellam* inapposite. Here, unlike in both *Tankisi* and *Pellam*, "the plaintiff in this case was unrepresented at the hearing level…[and] did not have the benefit of counsel to assemble a record for the ALJ's review." *Veley v. Colvin*, No. 1:13-CV-01204 (MAT), 2016 WL 8671963, at *6 (W.D.N.Y. Jan. 29, 2016) (finding it was error for the ALJ to fail to seek treating source opinions from a *pro se* claimant's medical providers and distinguishing *Tankisi* and *Pellam* in part on that basis). In addition, in this case, the record was devoid of an opinion from a treating or examining source that was consistent with the RFC (or even one that opined as to Plaintiff's ability to perform work-related functions). And, the treatment notes were not especially illuminating as to Plaintiff's functional capabilities so as to compensate for the lack of opinion evidence. Therefore, the record was not sufficient for the ALJ to make a sound RFC finding.

In sum, the Court concludes that it was error for the ALJ to not re-contact Dr. Ashmore. This error calls into question the assessed RFC as well as the ALJ's findings at steps four and five of the evaluation process. Thus, the matter must be remanded so that the ALJ can obtain

10

further information from Dr. Ashmore and from any additional treating sources, and then to continue through the sequential evaluation process.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to remand is granted and the Commissioner's motion to affirm is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Ruling.

This is not a recommended ruling. The consent of the parties allows this Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the ruling that remanded the case.

SO ORDERED, this 11th day of June, 2019, at Bridgeport, Connecticut.

                              */s/ William I. Garfinkel*
                              WILLIAM I. GARFINKEL
                              United States Magistrate Judge